UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BRANDON C. MCDUFFIE,

    Plaintiff,

v.                                                     Case No. 20-CV-1192

BRIAN FIELDHOUSE,
REBECCA VANBEEK,
WILLIAM D. SWEIKATOWSKI,
OFFICER SEEKINS,
JOHN KIND,
JAMES ELSINGER,
J. LUTSEY, and
DR. LAVOIE,

    Defendants.

---

## SCREENING ORDER

---

Plaintiff Brandon C. McDuffie, an inmate confined at the Waupun Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants violated his rights under federal law. This order resolves McDuffie's motion for leave to proceed without prepaying the filing fee and screens his complaint.

The court has jurisdiction to resolve McDuffie's motion to proceed without prepaying the filing fee and to screen the complaint in light of McDuffie's consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

1. *Motion for Leave to Proceed without Prepaying the Filing Fee*

The Prison Litigation Reform Act (PLRA) applies to this case because McDuffie was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On August 18, 2020, I ordered McDuffie to pay an initial partial filing fee of $93.89. (ECF No. 7.) McDuffie paid that fee on August 31, 2020. I will grant McDuffie's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

2. *Screening the Complaint*

   *2.1 Federal Screening Standard*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*2.2 McDuffie's Allegations*

At all relevant times, McDuffie was incarcerated at the Green Bay Correctional Institution (Green Bay). He is suing Correctional Officers Brian Fieldhouse, Rebecca

3

VanBeek, and Seekins; Captains William Sweikatowski and James Elsinger; Security Director John Kind; Health Services Manager J. Lutsey; and Dr. LaVoie. McDuffie separates his allegations under six headings, as follows.

*Harassment*

On October 6, 2018, Officer Fieldhouse questioned McDuffie about photographs of Fieldhouse's sister that were in McDuffie's cell. McDuffie told Fieldhouse that Fieldhouse's sister was his girlfriend. Fieldhouse responded, "not for long." (Docket #1 at 4.) About two weeks after that exchange, Officer Fieldhouse began a "campaign of harassment" against McDuffie. Fieldhouse began to issue McDuffie conduct reports "for no valid reason." (*Id.*) Fieldhouse had to destroy two of the conduct reports because McDuffie was permitted to do what Fieldhouse had charged in the conduct report, that is, go to the dining hall and get medication.

On October 22, 2018, prison staff ordered McDuffie to pack his property to move from the North Cell Hall to the South Cell Hall. Two days later, Fieldhouse issued McDuffie a conduct report that Captain Elsinger had approved. The conduct report, which charged McDuffie with soliciting a staff member, said that McDuffie was no longer dating Fieldhouse's sister and that he requested that Fieldhouse reach out to her for him. McDuffie accepted an offer of twenty days cell confinement to resolve the conduct report, under duress and out of fear that he would not be able to continue to communicate with Rebecca if he did not accept the offer.

The same day that Fieldhouse issued the conduct report, McDuffie filed a "SPN/Keep Separate" on Officer Fieldhouse to protect himself from further

4

harassment. The next day, Officer Fieldhouse tried to work in the South Cell Hall, which is where McDuffie had been moved to get away from Fieldhouse.

Defendants Kind and Swiekatwoski, even after being made aware of McDuffie's SPN request and relationship with Rebecca, allowed Officer Fieldhouse to work third shift in the South Cell Hall in November 2018 and January 2019. During that time, the letters McDuffie sent to Rebecca did not reach her. And on more than three occasions when Officers Fieldhouse, Seekins, and VanBeek worked, McDuffie received a card or letter from Rebecca that referenced enclosed pictures, but no pictures were enclosed.

*Retaliation and Deliberate Indifference to Safety*

Defendants Kind and Sweikatowski ignored McDuffie's SPN request in retaliation for a lawsuit McDuffie filed against Sweikatowski in July 2017. (Docket #1 at 7.) From October 2018 through February 2019, they did not contact McDuffie regarding his SPN request or harassment claims.

In December 2018, security staff in the prison rotunda area began to harass McDuffie. Due to a left knee injury, McDuffie requires the assistance of a knee brace to walk. Without the brace, it is very painful to walk. In 2017 and 2018, McDuffie wore a small brace under his pants and staff would pat search him when he went through the metal detector to move around the prison. Staff began to harass McDuffie about the brace and not being able to walk through the metal detector. McDuffie told staff that the Department of Health Services had approved him to have a special brace that can be worn outside of his pants.

5

At some point, officers began to strip search McDuffie instead of pat search him. An officer told McDuffie that Captain Elsinger had an issue with him wearing the knee brace around and simply getting pat searched. Elsinger ordered staff to strip search McDuffie if he did not make it through the metal detector. McDuffie asked Elsinger about this and he responded, "HSU say that you're able to remove the brace and walk thru the metal detector." (Docket #1 at 9.) It got to the point that McDuffie was being strip searched at least eight times a day and had only about five minutes to eat his meals once he got to the meal hall after being strip searched. In mid to late December 2018, McDuffie was placed on "feed cell" so he did not have to go out and eat. He also refused recreation, and he began to use the sink water in his cell to shower to avoid being strip searched.

*Delay in Medical Treatment*

On December 4, 2018, McDuffie filed an inmate complaint alleging that he was being denied medical treatment due to the lengthy wait on receiving his new brace and being forced to use the smaller brace that was worsening his knee condition. This complaint was affirmed. Defendant Lutsey admitted that McDuffie's new brace was at the prison that, "per security," it was not being given to him yet.

*Retaliation for Free Speech*

On January 24, 2019, Captain Elsinger ordered that McDuffie be removed from the feed cell list. This gave McDuffie the choice to go hungry or go out and be harassed by Elsinger in the rotunda. That morning, McDuffie went to the rotunda and he was ordered to go through the metal detector, which he did after removing his shoe and

6

knee brace. Captain Elsinger watched McDuffie walk through and then Officer Josephs ordered McDuffie to hand him his shoe. McDuffie objected but then gave Josephs the shoe. As McDuffie put his shoe back on, he said to Officer Josephs, "I don't know why y'all keep bothering me like this every day." (Docket #1 at 11.) Captain Elsinger walked over and he and McDuffie had an exchange during which McDuffie said he would sue Elsinger for harassment. Elsinger ordered McDuffie to go back to his cell.

About two hours after McDuffie returned to his cell, Captain Elsinger arrived there with three officers and told him that he would be placed on TLU and to turn over his knee brace. McDuffie says he told Elsinger, "This is you retaliating against me for saying I'd be filing a lawsuit for your harassment and y'all getting me back for my relationship with Fieldhouse sister." (Docket #1 at 12.) McDuffie was taken to the Restrictive Housing Unit. He was placed on observation for a few days during which time he was not allowed to have his knee brace. On January 28, 2019, McDuffie was taken off observation and placed on TLU pending a conduct report.

*Deliberate Indifference to Serious Medical Need*

McDuffie wrote to the "HSU" and informed them that he was off observation and needed his knee brace back because it was extremely painful to walk without it. McDuffie was informed that on January 24, 2019, Dr. LaVoie had discontinued his brace. McDuffie says he filed a request with the Special Needs Committee regarding his knee brace but that Captain Swiekatowski and J. Lutsey denied his request to have the brace returned, despite a 2017 order that the knee brace be worn

7

permanently. When McDuffie did not have his knee brace, he constantly suffered physical and mental injury as his condition grew worse.

*Conspiracy, Search and Seizure, Intentional Infliction of
Emotional Distress, and Denial of Free Speech and Association*

On January 25, 2019, when McDuffie was in the Restrictive Housing Unit, Officers Fieldhouse and VanBeek stole from his property every photograph, letter, and card that Rebecca had sent him as well as his personal address book. Defendant Officer Seekins told McDuffie that Fieldhouse and VanBeek had seized his personal property. McDuffie filed an inmate complaint and Security Director Kind initially told the investigator that Officer Fieldhouse did not have anything to do with the confiscation of the photos. On appeal of the inmate complaint, the DOC Secretary affirmed McDuffie's complaint and agreed that he should be reimbursed for his missing property.

McDuffie was granted an SPN and he was transferred to Waupun Correctional Institution. Once there, it was determined that his knee brace was medically necessary, and it was immediately returned to him. His pain is so bad now that he gets shots in his knee for the pain every six months. He was sent to a hospital for an MRI which revealed that he developed an abnormal lump on his kneecap area.

*2.3 Analysis*

*Harassment*

McDuffie does not state a claim against Fieldhouse for issuing him false conduct reports after Fieldhouse learned that his sister was McDuffie's girlfriend.

8

False conduct reports do not create a due process claim because the inmate can litigate the truthfulness of the report through a hearing process. *Lagerstrom v. Kingston*, 463 F.3d 621, 624-25 (7th Cir. 2006). Moreover, the only conduct report in which McDuffie alleges that he was charged, he served twenty days cell confinement, which does not raise due process concerns. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995).

McDuffie does not state a claim against Fieldhouse, Seekins, and VanBeek for confiscating his mail and pictures. Due process claims for deprivation of a prisoner's property fail where the plaintiff has adequate post-deprivation remedies. *See, e.g., Munson v. Gaetz*, 673 F.3d 630, 638 (7th Cir. 2012) ("Munson's complaint also makes it clear that he received all the process he was due in the form of a written notice explaining why he couldn't possess the books and a meaningful chance to be heard by a series of prison officials."); *Tyler v. Wick*, No. 14-CV-68-jdp, 2016 WL 5496631, at *6 (W.D. Wis. Sept. 29, 2016) (civil detainee had adequate postdeprivation remedies to challenge loss of property and money); *see also* Wis. Stat. §§ 893.35 (action to recover personal property after wrongful taking, conversion, or wrongful detention), and 893.51 (action for damages resulting from wrongful taking, conversion, or wrongful detention of personal property); *cf. Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996) (inmate complaint review system, certiorari review under Wisconsin law, and Wisconsin tort remedies against prison officials are adequate remedies for deprivation of good-time credits). McDuffie does not allege that these remedies are

9

unavailable to him. Thus, he may not proceed on a claim based on the confiscation of his property.

Regarding the allegations against Officer Fieldhouse based on the alleged campaign of harassment itself, harassment by a prison guard generally is not enough by itself to implicate a constitutional right. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Only in certain circumstances could sustained harassment be pervasive or severe enough that it could support an Eighth Amendment claim. One type of allegation that could support a claim would be that the harassment caused "significant psychological harm" to the inmate. *See Beal v. Foster*, 803 F.3d 356, 359 (7th Cir. 2015). In *Beal*, guards called "an inmate 'derisive terms' like 'punk, fag, sissy, and queer,' thereby 'increasing the likelihood of sexual assaults on him.'" *Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015) (quoting *Beal*, 803 F.3d at 358). The court found that this kind of abuse constituted claims for violation of the plaintiffs' due process rights under the Fourteenth Amendment and equal protection claims under the Fourteenth Amendment Equal Protection Clause. *Id.* In addition, "it would be cruel and unusual for a correctional officer to tell an inmate with a severe headache that the doctor had told the officer the inmate actually had terminal brain cancer." *Lisle v. Welborn*, 922 F.3d 705, 718 (7th Cir. 2019) (citing *Beal*, 803 F.3d at 357). Likewise, it would be cruel and unusual for a guard to tell an inmate falsely that his family had been killed in a car crash. *Id.* (citing *Beal*, 803 F.3d at 357). In addition, it can be cruel and unusual in extreme cases "where medical staff use an inmate's known psychological vulnerability to cause psychological anguish" such as

10

where a nurse allegedly taunted and encouraged an inmate know to be suicidal and in the midst of a mental health crisis to take his own life. *Id.* at 718-19.

Fieldhouse's allegations do not come close to the kind of harassment described in *Beal* and *Lisle*. After Fieldhouse learned that McDuffie was dating his sister, he allegedly told McDuffie that he would not be dating her much longer, issued Fieldhouse false conduct reports, confiscated pictures that his sister mailed to McDuffie, and worked in the cell hall to which McDuffie was reassigned. These allegations, without more, do not amount to "harassment" that violates the United States Constitution.

*Retaliation and Deliberate Indifference to Safety*

To proceed on a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotations omitted).

McDuffie alleges that Kind and Sweikatowski ignored his SPN request and failed to contact him from October 2018 to February 2019 regarding his SPN or harassment claims in retaliation for a lawsuit McDuffie had previously filed against Sweikatowski. These allegations do not satisfy the second element of a retaliation claim. The court applies an objective test: "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to

11

engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 636 (7th Cir. 2020) (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)). McDuffie's allegation that Kind and Sweikatowski ignored his SPN request overlooks the fact that McDuffie was transferred from the North Cell Hall to the South Cell Hall on October 22, 2018, allegedly to get away from Fieldhouse. And while Fieldhouse worked on third shift in the South Cell Hall in November 2018 and January 2019, there is no indication that Kind or Sweikatowski had any involvement in his periodic work in the South Cell Hall. McDuffie says that his SPN was eventually granted and he was transferred to Waupun Correctional Institution, where he resides now. The fact that Kind and Sweikatowski did not contact him about his SPN request prior to granting it (assuming it was them who did grant it) is not objectively serious. *See Douglas*, 964 F.3d at 647.

McDuffie also alleges that Elsinger harassed him by enforcing a requirement that he go through a metal detector and be strip searched while moving around the prison due to his knee brace. Not all prison staff required that McDuffie do this, and it was very inconvenient because it ended up allowing him only about five minutes eat once he got to the dining hall. These allegations do not state a plausible harassment claim under the Eighth Amendment.

*Delay in Medical Treatment*

"The Eighth Amendment's proscription against 'unnecessary and wanton infliction of pain' is violated when prison officials demonstrate 'deliberate indifference to serious medical needs' of prisoners—whether the indifference 'is manifested by

12

prison doctors in response to prison needs or by prison guards in intentionally denying or delaying access to medical care.'" *Lewis v. McLean*, 864 F.3d 556, 562 (7th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

McDuffie does not state a claim against Lutsey for delaying his new, larger brace. While he may be able to state a claim, his allegations are simply too sparse to support a plausible claim that Lutsey acted with deliberate indifference to a serious medical need. *See Iqbal*, 556 at 678.

*Retaliation for Free Speech*

McDuffie alleges that Elsinger placed him in TLU and took away his knee brace in retaliation for McDuffie telling him that he was going to file a lawsuit against Elsinger. McDuffie states a retaliation claim against Elsinger based on these allegations. However, McDuffie does not state a claim that Elsinger retaliated against him for his relationship with Fieldhouse's sister.

*Deliberate Indifference to a Serious Medical Need*

McDuffie alleges that on January 24, 2019, he was informed that Dr. LaVoie had discontinued his brace. He also alleges that, after he filed a request with the Special Needs Committee regarding his knee brace, Captain Sweikatowski and J. Lutsey denied his request to have the brace returned, despite a 2017 order that the knee brace be worn permanently. McDuffie says that without his knee brace, he constantly suffered physical and mental injury as his condition grew worse.

McDuffie simply alleges that Dr. LaVoie discontinued his brace, and that Captain Sweikatowski and Lutsey denied his request to return it. These allegations

13

could support an Eighth Amendment claim that these defendants acted with deliberate indifference to his serious medical needs. McDuffie should provide any additional information he has about these allegations if he decides to file an amended complaint.

*Conspiracy, Search and Seizure, Intentional Infliction of*
*Emotional Distress, Denial of Free Speech*

McDuffie alleges that Fieldhouse and VanBeek stole his property when they inventoried his cell property and that Seekins told him that did it. However, as explained above, McDuffie does not state a claim against Fieldhouse and VanBeek based on the deprivation of his property because he has adequate postdeprivation remedies. Thus, McDuffie may not proceed on a claim based on these allegations.

In summary, McDuffie states a retaliation claim against Elsinger for placing him in TLU and taking away his knee brace for saying that he was going to file a harassment lawsuit against him. McDuffie may state Eighth Amendment medical care claims against Dr. LaVoie for discontinuing his brace, and against Sweikatowksi, and Lutsey for denying his requests to return the brace. I will dismiss these defendants, but McDuffie may raise these allegations in an amended complaint, if he chooses to file one. All other defendants and claims will be dismissed.

**THEREFORE, IT IS ORDERED** that McDuffie's motion for leave to proceed without prepaying the filing fee (Docket #2) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants Fieldhouse, VanBeek, Sweikatowksi, Seekins, Kind, Lutsey, and LaVoie are **DISMISSED**.

14

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendant James Elsinger. It is **ORDERED** that, under the informal service agreement, defendant Elsinger shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that the agency having custody of McDuffie shall collect from his institution trust account the $256.11 balance of the filing fee by collecting monthly payments from McDuffie's prison trust account in an amount equal to 20% of the preceding month's income credited to McDuffie's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If McDuffie is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where McDuffie is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

McDuffie is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. McDuffie is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. McDuffie's failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that McDuffie may find useful in prosecuting his case.

Dated at Milwaukee, Wisconsin, this 5th day of October, 2020.

BY THE COURT:

s/*Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge

17